**SO ORDERED.**

**SIGNED this 10 day of July, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILSON DIVISION

IN RE:

BRASSWOODS APARTMENTS, LLC,                    Case No. 08-01608-8-JRL

and

BRASSWOODS APARTMENTS II, LLC                  Case No. 08-01609-8-JRL

Debtors.

_____

**ORDER**

This case is before the court on the motions of lenders JPMCC 2002-CIBC4 Greenville Apartments and MSCI 2006-IQ11 Highway 264, LLC (collectively "the lenders") (1) to set aside the orders authorizing appointment of real estate broker Ed Hoel, and (2) for contempt against Rebecca Farish. On July 7, 2008, the court conducted a hearing on these matters in New Bern, North Carolina.

1. <u>Motion to Set Aside Order</u>

On May 22, 2008, the debtors, Brasswoods Apartments, LLC and Brasswoods Apartments II, LLC, filed motions to employ Ed Hoel, of Triangle Commercial Real Estate Inc., to act as real

estate broker to market and sell the debtors' apartment properties. The apartment properties constitute most of the lenders' collateral. An order authorizing the appointment of Hoel was entered on June 3, 2008 without a hearing. The lenders assert that they were not given the opportunity to object to the motions and that, had they had the opportunity to object, they would have done so on the following grounds. First, the proposed contract is not a contract at all and does not detail the services that Hoel would provide to the estates. Rather, it is a copy of a pre-petition listing agreement between Hoel as broker and the debtors that expired on April 13, 2008. Second, the lenders contend that the expired pre-petition listing price of $13,000,000.00, which the motions to employ propose to continue, is too high and may explain why Hoel failed to produce a sale. Third, the motions to employ and expired pre-petition listing agreement fail to set forth the terms of engagement appropriate for a broker working to effect a bankruptcy sale under 11 U.S.C. § 363 or as part of a confirmed Chapter 11 plan. Fourth, the motions to employ fail to explain what rights, if any, Hoel might have against the debtors, the lenders, or the properties if the properties are sold in bankruptcy or at foreclosure sale. Finally, the lenders assert that the estates should hire as its broker Hal Kerns of Brown Investment Properties, Inc., who has had success in marketing and selling other residential apartment properties in North Carolina and who is willing to sign a listing agreement for a two percent commission.

At the hearing, the lenders stated that Hoel does not wish to continue under a long-term agreement to act as broker for the properties. However, Hoel has located at least one potential buyer for the property and is willing to accept a two percent commission for the sale of the property if that potential buyer goes through with the purchase of the property. The debtors do not dispute this contention. Therefore, the court allows the motion to set aside the order authorizing appointment

of broker and Hoel's approval to market the property is vacated. However, the motion is allowed with the proviso that, if Hoel is successful in bringing the sale to fruition with the buyer with whom he has already begun negotiations, he is allowed a two percent commission for completing that sale. The debtors have ten days from the date of the hearing to provide the court with a proposal that gives Brown Investment Properties, Inc. authority to broker the properties or to suggest an alternate broker.

2. Motion for Civil Contempt

The lenders also move the court pursuant to Rule 9020 of the Federal Rules of Bankruptcy Procedure for entry of an order of civil contempt against Rebecca Farish, individually and as member-manager of the debtors, for her violations of the court's Order Authorizing Debtor's Use of Cash Collateral Upon Conditions Providing Adequate Protection (the "adequate protection order"), which was issued on April 17, 2008. The adequate protection order permits the debtors' use of the lenders' cash collateral, but only on the condition that the lenders be provided adequate protection consisting of: (1) the appointment of Peter Placentino of Brown Investment Properties, Inc. as property manager with control over the debtors' cash receipts and disbursements, (2) the obligations of Mrs. Farish to identify, segregate, and turn over to the property manager all of the debtors' cash that was received or collected after the petition date and prior to the property manager's appointment, (3) the property manager's creation and use of a cash collateral account for all of the debtors' post-petition receipts, including those that Mrs. Farish is obligated to turn over, and (4) monthly adequate protection payments by the property manager to the lenders from available funds in the cash collateral account.

Mrs. Farish received and was in control of the debtors' post-petition rents, other income, and cash collateral from the petition date of March 7, 2008 until the property manager took over on April

18, 2008. After entry of the adequate protection order, Mrs. Farish set up debtor in possession bank accounts (DIP accounts) for tenant security deposits and cash collateral for each of the two debtors. However, the lenders contend that a substantial but unknown amount of the debtors' post-petition rent and other income was never deposited into the DIP accounts. According to the lenders, Farish has not identified, segregated, and turned over those funds to the property manager. In addition, the lenders have reason to believe that some of the post-petition income was deposited into another account that is used for Farish, Inc., another of Mrs. Farish's companies. The lenders contend that the court should hold Farish in civil contempt for failure to comply with the adequate protection order. The lenders seek an order of civil contempt requiring Farish to immediately account for and turn over to the lenders, as additional adequate protection payments, (1) all of the March and April rent and other income of the debtors that she received but did not deposit in the DIP accounts, (2) to provide the lenders with her Microsoft Money computer files showing all of her bank account deposits and disbursements through May 31, 2008 and (3) full copies of all of her bank records from the petition date through May 31, 2008. The lenders also seek damages from Mrs. Farish in the amount of legal fees and expenses it incurs in connection with the contempt proceeding.

     At the hearing, Mrs. Farish was questioned by counsel for the lenders regarding the missing funds that should have been deposited in the DIP accounts and transferred to the property manager. Her responses were evasive, as she repeatedly stated that she did not know what happened to the money and that she would have to consult her accountant to determine the status of the funds. Mrs. Farish admitted that she has primary control over the debtors' accounts and the accounts of Farish, Inc., but stated that she is unable to explain numerous withdrawals from those accounts. In addition, the lenders questioned Mrs. Farish regarding her failure to produce the required documents for March and April 2008. Mrs. Farish repeatedly stated that she did not want to be responsible for

producing the documents and expected the lenders to issue a subpoena in order to get the documents, despite the court order requiring their production.

It is clear to the court that Mrs. Farish has willfully and intentionally chosen to violate the adequate protection order. Mrs. Farish has had more than two months to comply and has ignored the lenders' direct requests to comply with the conditions of the order. Moreover, it is abundantly clear to the court that thousands of dollars that were required to go into DIP accounts for the two debtors went elsewhere. The integrity of the Chapter 11 process turns on every penny that comes into the bankruptcy estate being closely accounted for, monitored, and tracked. Although Mrs. Farish's vague testimony provided the court no insight into where the funds ultimately went, the court is convinced that funds that were required to be deposited into the DIP accounts by orders of this court and federal bankruptcy law actually went elsewhere. Accordingly, the court determines that Mrs. Farish is in contempt.

To purge the contempt, Mrs. Farish has seven days from the date of the hearing to produce to counsel for the lenders all of her Microsoft Money files and the bank statement for every account, corporate or individual, over which she has direct or indirect control from January 1, 2008 until June 1, 2008. If Mrs. Farish does not fully comply with this order and produce all required documents, the court will take further action. Specifically, if counsel for the lenders certifies to the court that Mrs. Farish has not produced all of the required documents within seven days of the date of the hearing, the court will order the U.S. Marshal to hold Mrs. Farish in custody until the documents are produced. In addition, within ten days of receipt of all the required documents, lenders' counsel is directed to certify to the court the amount he believes has been inappropriately taken from the debtors' accounts. Within the same period, lenders' counsel is also directed to provide the court with an itemized statement of his fees associated with this motion. Within ten days of receiving that

certification, Mrs. Farish is required to both return the funds to the DIP accounts and defray the costs to the lenders' counsel for pursuing the motion for contempt. Again, if this provision is not met, the court will direct that Mrs. Farish be taken into custody. This is a serious matter. Diversion of estate funds that constitute cash collateral violates not only the court's order but also 11 U.S.C. § 363(c)(2), and may constitute a criminal offense under 18 U.S.C. § 153. The court trusts that strict compliance will be forthcoming.

Based on the foregoing, the motions to set aside the order authorizing appointment of broker and motions for contempt against Rebecca Farish are ALLOWED, pursuant to the provisions listed above.

"END OF DOCUMENT"